United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Michael Van Cleve, Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-23611-Civ-Scola |
| ) | |
| Wilbur L. Ross, U.S. Secretary of ) | |
| Commerce, and others, Defendants. ) | |

**Order Granting in Part and Denying in Part Motion to Dismiss**

This action arises from Plaintiff Michael Van Cleve's claim that "race is a myth based on pseudoscience" such that the Census, which requires respondents to report their race, perpetuates arbitrary data that results in discrimination against groups of people who are not accurately represented by the different race options from which the Census requires them to pick. (Third Am. Compl., ECF No. 32 at ¶¶ 178, 219, 303.) Defendants Wilber L. Ross, in his official capacity as United States Secretary of Commerce, Steven Dillingham, in his official capacity as Direct of United States Census Bureau, Russel Thurlow Vought, in his capacity as Director of the Office of Management and Budget, and three respective agencies, jointly move to dismiss with prejudice the amended complaint for lack of subject matter jurisdiction. (Mot. to Dismiss, ECF No. 76.) The Plaintiff opposes the motion (Resp. in Opp'n, ECF No. 77) and the Defendants filed a reply. (Reply, ECF No. 78.) After careful review of the parties' submissions, the record, and applicable law, the Court **grants in part** the motion to dismiss and directs the Clerk of the Court to **close** this case.

1. **Background**

In this action, Van Cleve challenges the Defendants' adherence to and failure to update their standards for collecting racial data. Van Cleve is a Florida-licensed attorney who owns a law firm located in Miami-Dade County. (Third Am. Compl., ECF No. 72 at ¶ 21.) Van Cleve has litigated cases where race data or race information is necessary. (*Id.* at ¶ 228.) For example, Van Cleve has represented individuals alleging violations of the Fair Housing Act. (*Id.* at ¶ 229.) Van Cleve claims that his ability to adequately represent clients is diminished if he cannot access accurate race data. (*Id.* at ¶ 230.) Van Cleve alleges that inaccurate racial data "creates ethical concerns for Florida lawyers, since a Florida lawyer should not offer evidence the lawyer knows to be false." (*Id.* at ¶ 231.)

The Census Bureau is part of the U.S. Department of Commerce. The Office of Management and Budget (the "OBM") is part of the Executive Office of the President of the United States. https://www.whitehouse.gov/omb/ (last visited Oct. 12, 2021). The OMB creates the minimum standards for maintaining, collecting, and presenting federal data on race and ethnicity. *See Revisions to the Standards for the Classification of Federal Data on Race and Ethnicity*, 62 Fed. Reg. 58,782 (Oct. 30, 1997) (the "Standards"). The Census Bureau and the remaining defendants are required to adhere to the standards on race and ethnicity set by OMB. (Third Am. Compl., ECF No. 72 at ¶¶ 22–61.)

The Standards provide for six "minimum" race and ethnicity categories: (i) American Indian or Alaska Native, (ii) Asian, (iii) Black or African American, (iv) Hispanic or Latino, (v) Native Hawaiian or Other Pacific Islander, and (vi) White. (*Id.* at ¶ 160.) The Standards also allow agencies to collect information on race and ethnicity using a "two-question format" whereby the "Hispanic or Latino" category is included in a separate question about the respondent's ethnicity. (*Id.* at ¶ 203 n.133.)

In 2016, to help make its decision on whether it include a Middle Eastern and North African ("MENA") category, the OMB requested commentary on its minimum race categories, which yielded support for inclusion of a distinct MENA race category. (Id. at ¶ 254.) Similarly, the Census Bureau conducted its own analysis regarding inclusion of a distinct MENA category in the 2020 Census. "The Census Bureau found through experimentation, [t]he inclusion of a MENA category significantly decreased the overall percentage of respondents reporting as White or SOR and significantly increased the percentage of respondents reporting as Black or Hispanic . . . When no MENA category was available, people who identified as MENA predominantly reported in the White category, but when a MENA category was included, people who identified as MENA predominantly reported in the MENA category." (*Id.* at ¶ 256.) Ultimately, OMB did not revise its standards, and on January 26, 2018, the Census Bureau announced that the MENA category would not be added to the 2020 Census. (*Id.* at ¶ 80.)

Van Cleve initiated this action on August 30, 2020 and amended his complaint as a matter of course. (Compl., ECF No. 1.) Since then, the Court has granted Van Cleve's two requests to file amended complaints. In the operative third amended complaint, Van Cleve challenges the Standards as unlawful. (*See generally* Third Am. Compl., ECF No. 72.) Van Cleve claims that use of the Standards results in inaccurate racial data that affect his ability to represent clients and impede the judiciary from relying on accurate census data in various cases. (*Id.* at ¶¶ 230, 232, 234.) The inaccurate data also

impacts the federal funding of certain federal programs such as Medicare, Medicaid, Head Start, Title VI, and the National School Lunch Program. (*Id.* at ¶ 196.) Lastly, Van Cleve "objects to being miseducated about race based on a clearly arbitrary and facially inconsistent agency decision which is fairly traceable to Defendants' agency rules." (*Id.* at ¶ 240.)

In count one, Van Cleve claims that the Defendants violated the Administrative Procedure Act ("APA") because in following the Standards, they have excluded Middle Eastern and North African populations from the 2020 Census. (Third Am. Compl., ECF No. 72 at ¶ 7.) Van Cleve seeks: "[a]n order directing revision of the race data prior to its dissemination to the public, where all persons that identified as MENA are tabulated as their own race, instead of being aggregated under White," "[a]n order directing Defendants to revise the race data from the 2020 U.S. Census through other administrative records at their disposal or supplement the data with other surveys . . . prior to its release," and "[a] declaration that the Defendants['] refusal to use a form . . . [with] a separate race box for the MENA group[] was a violation of the APA, the PRA, the Evidence Act, or Policy Directive #1." (*Id.* ¶ 260.)

In count two, Van Cleve also alleges that the Standards unlawfully allow a "two-part race and ethnicity question" as opposed to requiring a "combin[ed] race and ethnicity question" that would "treat Hispanics as a race." (*Id.* at ¶ 8.) These deficiencies, Van Cleve alleges, constitute violation of the APA. (*Id.* at ¶ 275.) Van Cleve seeks a declaratory judgment and orders directing the Defendants to revise race data collected using the Standards so that "all persons that identified as Hispanic are tabulated as their own race, instead of being aggregated under the five main races." (*Id.* ¶ 279.)

Lastly, in count three, Van Cleve alleges that the Defendants have violated the Paperwork Reduction Act by "failing to promulgate a new rule revising or updating the race categories from the [Standards.]" (*Id.* ¶ 290.) Van Cleve seeks an order directing the Defendants to update the Standards and enjoining them from using the Standards for any future statistical surveys.

The Defendants have filed a motion to dismiss the third amended complaint with prejudice for lack of Article III standing, as time-barred and unreviewable because the Standards do not constitute a final agency action.

## 2. Legal Standard

Because the question of Article III standing implicates subject matter jurisdiction, it must be addressed as a threshold matter prior to the merits of any underlying claims. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250 (11th Cir. 2015).

Indeed, standing generally must be present at the inception of the

lawsuit. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 n.5 (1992). Article III of the U.S. Constitution grants federal courts judicial power to decide only actual "Cases" and "Controversies." U.S. Const. art. III § 2. The doctrine of standing is a "core component" of this fundamental limitation that "determin[es] the power of the court to entertain the suit." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264–65 (11th Cir. 2011) (quoting *Lujan,* 504 U.S. at 560; *Warth v. Seldin,* 422 U.S. 490, 498 (1975)).

"[A] dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991)). Motions to dismiss a complaint for lack of subject matter jurisdiction can consist of either a facial or factual attack on the complaint. *Id.* A facial attack requires the court to "merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction," whereas a factual attack "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* at 1233–34. "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Id.* at 1232.

### 3. Analysis

The Defendants move to dismiss the operative complaint in its entirety. They offer four bases of dismissal: First, the Defendants argue that Van Cleve lacks Article III standing to bring this action. The Defendants contend that Van Cleve's injury is not particularized or concrete. Second, the Defendants argue that Van Cleve's challenges are barred by the APA's six-year statute of limitations. Third, the Defendants contend that Van Cleve's challenge is unreviewable because the Standards are discretionary. Fourth, the Defendants argue that dismissal is warranted because Van Cleve's challenge does not constitute a "final agency action" within the meaning of the APA.

Van Cleve opposes the motion on all grounds. Van Cleve offers four different theories of standing or harms he has suffered. Van Cleve also disputes that his claims are time-barred or unreviewable.

Because the Court finds that Van Cleve has failed to allege sufficient facts to establish Article III standing, the Court **grants in part** the Defendants' motion to dismiss (ECF No. 76), **dismisses** the complaint, and directs the Clerk of the Court to **close** this case. The Court **denies** the Defendants' request to dismiss this case with prejudice. *See Stalley ex rel. U.S.*, 524 F.3d at 1232.

### A. Standing

The Court must first begin with the threshold question of whether plaintiffs have constitutional standing to assert their claims at all. Article III of the United States Constitution grants the Judiciary authority to adjudicate only "Cases" and "Controversies." U.S. Const. art. III. To satisfy Article III's well-established "case or controversy" requirement, plaintiffs must demonstrate that they have "standing" to sue; that is, they must show that they (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of defendants, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016); *Lujan*, 504 U.S. at 560; *Flat Creek Transp., LLC v. Fed. Motor Carrier Safety Admin.*, 923 F.3d 1295, 1300 (11th Cir. 2019).

Here, the parties hotly dispute whether Van Cleve has alleged sufficient facts to show he has suffered an injury in fact. The complaint alleges four different theories of standing: (1) informational injury, (2) injury as an attorney relying on racial data and economic harm to his practice, (3) miseducation in his military training; and (4) census degradation. The Court turns to each theory below.

#### *1) Informational Injury*

Van Cleve's first argument for Article III standing is that he has suffered an informational injury. (Resp. in Opp'n, ECF No. 81 at 12.) To show an informational injury, Van Cleve must show: (1) he "has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose" to him, and (2) he "suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Elec. Priv. Info. Ctr. v. United States Dep't of Com.*, 928 F.3d 95, 103 (D.C. Cir. 2019), *cert. denied sub nom. Elec. Priv. Info. Ctr. v. Dep't of Com.*, 140 S. Ct. 2718, 206 L. Ed. 2d 854 (2020).

Van Cleve alleges that the Defendants have deprived him of accurate census data by using the 1977 Standards that exclude MENA and Hispanics as distinct race options (as opposed to not offering MENA and having a two-part race and identity question for persons who identify as Hispanics). Van Cleve further claims that the Defendants are required to produce accurate census information under the PRA, 44 U.S.C. § 3506(e).[1] Section 3506(e) provides:

---

[1] The Court notes that the PRA does not provide a private cause of action. *United to Protect Democracy v. Presidential Advisory Comm'n on Election Integrity*, 288 F. Supp. 3d 99, 103 (D.D.C. 2017). Thus, to the extent count three constitutes a private claim under the PRA, the claim is dismissed.

"With respect to statistical policy and coordination, each agency shall— . . . (6) make data available to statistical agencies and readily accessible to the public." The agencies do not dispute that they are subject to the requirements; however, they challenge Van Cleve's reliance on this particular section because on its face it does not entitled him to the information he seeks. The Court agrees. On its face, Section 3506(e) does not require dissemination of census data that includes MENA as a distinct race option. Nor does Van Cleve cite to any case law supporting his standing argument under Section 3506(e).

Van Cleve cites to *United to Protect Democracy v. Presidential Advisory Comm'n on Election Integrity*, 288 F. Supp. 3d 99 (D.D.C. 2017), in support of his argument. However, that case is inapposite. There the court found that the plaintiff had organizational standing pursuant to the PRA, under 44 U.S.C. § 3507(a)(1)(D). Section 3507(a)(1)(D) requires that federal agencies abide by certain procedures, including providing specific disclosures before collecting information. The complaint alleged that the defendant agencies had failed to follow those specific procedures, and it was undisputed that the necessary disclosures were not made. Such is not the case here. Unlike Section 3507(a)(1)(D), Section 3506(e) does not require the dissemination of any specific data or disclosures, and Van Cleve makes no allegations that the Defendants failed to follow the procedures set forth in Section 2506(e). Rather, Van Cleve only argues that the Defendants failed to include his preferred information, which is not a cognizable harm under the PRA.

### 2) Harm of Interests as Attorney

Van Cleve attempts to show Article III injuries by arguing that the Defendants' statutory violations resulted in a harm to his interests as an attorney who relies on racial data, including Census information. (Resp. in Opp'n, ECF No. 81 at 13–15.)

Courts consider two things when evaluating whether concrete harm flows from an alleged statutory violation: The Court asks "if the violation itself caused harm, whether tangible or intangible, to the plaintiff. If so, that's enough. If not, we ask whether the violation posed a material risk of harm to the plaintiff. If the answer to both questions is no, the plaintiff has failed to meet his burden of establishing standing." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 928 (11th Cir. 2020) ("The point is that for standing purposes, no matter what label you hang on a statutory violation, it must be accompanied by a concrete injury."). The Court finds Van Cleve has failed to satisfy his standing burden.

Van Cleve alleges that he is an attorney who "has the desire to help underprivileged communities through legal assistance." (Third Am. Compl, ECF

No. 72 at ¶ 215.) In his capacity as an attorney, Van Cleve has represented individuals that would be included within the MENA race or the Hispanic race in cases "where their cultural identities were an issue." (*Id.* at ¶ 216.) These cases include Fair Housing cases. (*Id.* at ¶ 230.) Van Cleve claims that inaccurate racial data affects his role as an attorney because he cannot reasonably rely on inaccurate data. (*Id.*) Van Cleve alleges that inaccurate racial data "creates ethical concerns for Florida lawyers, since a Florida lawyer should not offer evidence the lawyer knows to be false." (*Id.* at ¶ 231.) Lastly, Van Cleve alleges that as a busines owner he has "diverted a considerable amount of his resources, incurred financial costs, exhausted time, manpower, and declined other cases . . . to get Defendants to engage in corrective action or counteract action for their outdated race questions and outdated race systems." (*Id.* at ¶ 218.) In his own declaration, Van Cleve claims that more accurate racial data would allow him to better identify who needs pro bono assistance or allow him to more readily identify civil rights violations. (Van Cleve Decl., ECF No. 22–1.)

To begin with, Van Cleve's injuries related to his diminished ability to represent individuals in civil cases like Fair Housing cases or readily identify civil rights violations are conclusory and vague. It is unclear from the complaint and Van Cleve's response in opposition how census data or racial information is necessary in those types of cases or how the current information, which Van Cleve asserts is inaccurate, hinders him from representing underprivileged communities. Relatedly, Van Cleve's alleged harm as an attorney (that he cannot submit false information to the courts) is insufficient because the complaint fails to connect what information he would be submitting to the court in those cases and why.

Van Cleve relies on the declaration of Mark Sobocienski, an attorney who knows Van Cleve personally, in support of his standing argument. Sobocienski declares that he is an attorney who practices commercial litigation, criminal defense, foreclosure defense, collections, and real estate transactions. (Sobocienski Decl., ECF No. 22–1.) Sobocienski affirms that it is his subjective belief that "it is important for lawyers like me or Michael Van Cleve to have accurate statistical information from the government. Statistical data is heavily utilized in the legal profession, and often necessary to prove facts in litigation." (*Id.* at 2.) This declaration is perhaps vaguer than Van Cleve's complaint as it fails to state whether Sobocienski relies on the specific data at issue in this case, how it is utilized in any of his practice fields, how the current inaccurate data has affected his practice, or how it has affected Van Cleve's practice. Van Cleve also relies on the declaration of another lawyer Jianyin Liu, who stated that "our current categorization of races is not only confusing, but also causes

loss of trust in the government," and "as civil attorneys, we are facilitating the implementation of administrative and legal actions." (Liu Decl., ECF No. 28–1). This declaration similarly fails to connect Van Cleve's practice in civil cases to accurate racial information. By Liu's definition of standing, any attorney who challenged a law or procedure as unconstitutional would have standing simply because he or she is in the business of "facilitating" the implementation and/or enforcement of laws. Nor is Van Cleve's reliance on his former clients' declarations persuasive as they do not clarify how Van Cleve used the racial data at issue in those cases. (Bargul Decl., ECF No. 23–1; Suleiman Decl., ECF No. 23–2.)[2]

Van Cleve cites to *Nat'l Women's L. Ctr. v. Off. of Mgmt. & Budget*, 358 F. Supp. 3d 66, 71 (D.D.C. 2019), in support of his argument that "[a] party can also satisfy Article III injuries through a harm to their interests, even if the information is not statutorily required to be disclosed." (Resp. in Opp'n, ECF No. 81 at 13.) In *Nat'l Women's*, the court explained that in deciding whether the organization had suffered a concrete injury, the court looks first to whether the defendant agency's actions injured the organization's interest. *Id.* at 79. Ultimately, the court held the organization had shown its own concrete injury through evidence of its specific mission, its purported use of the sought-after gender pay gap data that was not provided, how the data would have been used to represent individuals, and how the data would reduce the organization's cost in representing its clients. As discussed above, Van Cleve has failed to allege or submit any facts showing his specific injury in representing his clients in cases that touch upon the issue of race or cultural identity.

Van Cleve's purported injury of wasted time, diversion of monies into this action, and rejection of other cases to pursue this action also fails to establish standing. Although the Eleventh Circuit has previously held that allegations of wasted time may state a concrete injury for standing purposes, the court has also declined to find standing when the complaint lacked specific allegations of same or where the wasted time constituted a hypothetical future harm. *Muransky*, 379 F.3d at 930–31. It is unclear what Van Cleve considers to be wasted time. However, the Court assumes he means the time spent working on this matter. This choice was Van Cleve's alone and unrelated to the Defendants' alleged misconduct. *See Colceriu v. Barbary*, No. 8:20-CV-1425-MSS-AAS, 2021 WL 2471211, at *2 (M.D. Fla. June 14, 2021) (Scriven, J.) ("Moreover, it is not clear that a mere waste of time, voluntarily expended,

---

[2] It appears from the declarations that whatever racial data used, if any, was sufficient or unnecessary to succeed in those cases.

could suffice to establish injury-in-fact.") (citing *Muransky*, 979 F.3d at 926 (recognizing that a claim of wasted time is not always an injury-in-fact)). Further, Van Cleve does not cite any authority supporting his argument that wasted time pursuing the underlying action confers standing. The Court notes that Van Cleve's position would therefore confer standing on every plaintiff that spent time researching issues before filing a complaint or spent time litigating the action for which the plaintiff claims he has standing. Relatedly, Van Cleve's choice to turn down work to focus on this case and ensure he has better data to rely on in future cases is also a voluntary decision that the Court finds insufficient to confer standing. *See Crowder v. Andreu, Palma, Lavin & Solis, PLLC*, No. 2:19-CV-820-SPC-NPM, 2021 WL 1338767, at *6 (M.D. Fla. Apr. 9, 2021) ("So any time [the plaintiff] spent researching APLS about a hypothetical future harm does not confer standing.") (citing *Muransky*, 979 F.3d at 931 ("Where a 'hypothetical future harm' is not 'certainly impending,' plaintiffs cannot manufacture standing merely by inflicting harm on themselves.")).

### 3) Forced Miseducation Upon Van Cleve as a Service Member

Van Cleve also alleges that as an Army Reserve service member he has been forced to complete annual diversity training, which is inaccurate because it excludes MENA and traches inaccurate racial categories. (Third Am. Compl, ECF No. 72 at ¶¶ 236–240.) He argues that his objection to being miseducated confers standing in this case. (Resp. in Opp'n, ECF No. 81 at 18–19.)

The Eleventh Circuit has reviewed military judgments and decisions under the lens of the political question doctrine. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1280 (11th Cir. 2009). "The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Id.* (quoting *Japan Whaling Ass'n v. American Cetacean Soc.*, 478 U.S. 221, 230, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986)). Political questions "have been held to be nonjusticiable and therefore not a 'case or controversy' as defined by Article III." *Id.* (quoting *Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum Laden Aboard Tanker Dauntless Colocotronis*, 577 F.2d 1196, 1203 (5th Cir.1978)). The political question doctrine has been deemed applicable to military training policies. *Id.* at 1287 (citing *Gilligan v. Morgan*, 413 U.S. 1, 5–6, 93 S. Ct. 2440, 37 L. Ed. 2d 407 (1973) (suit was barred by political question doctrine because it entailed judicial review of "training, weaponry and orders" of the Ohio National Guard)). Because Van Cleve is challenging military diversity training, the Court finds that his challenge is nonjusticiable.

Van Cleve does not distinguish *Carmichael*, but rather argues "not everything involving the military is a nonjusticiable political question unreviewable by the courts." (Resp. in Opp'n, ECF No. 81 at 18.) He cites to *Albino v. US*, 78 F. Supp. 3d 148 (D.D.C. 2015), where the court reviewed a challenge to the Army Board for Correction of Military Records's denial of the plaintiff's request to remove a negative officer evaluation report. The Court declines to apply *Albino* to this case in light of controlling Eleventh Circuit case law. Moreover, Van Cleve has not cited to any authority supporting his argument that miseducation alone constitutes a concrete injury for standing purposes.

### 4) *Census Degradation*

Van Cleve's last theory for Article III standing is that he has suffered harm from degradation of census data. (Resp. in Opp'n, ECF No. 81 at 16.)

The United States Supreme Court has recognized that census degradation may constitute a concrete injury for purposes of Article III standing. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2565, 204 L. Ed. 2d 978 (2019). Even so, plaintiffs must do more than just allege census degradation has occurred. They must allege sufficient facts showing "present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Id.* Because the Court has already found that Van Cleve has failed to show that he has suffered a concrete injury, Van Cleve's argument is unavailing.

Van Cleve relies on *Kravitz v. United States Dep't of Com.*, 336 F. Supp. 3d 545, 557 (D. Md. 2018), to show that he has satisfied his burden. There, the court found that the plaintiffs, individual residents from various states, had shown that they had suffered concrete injuries stemming from a Census citizenship question. *Id.* at 557. The plaintiffs showed that they lived in states that have a higher percentage of undercounted groups that would be injured by a citizenship question because it would decrease the undercounted group's participation in the 2020 Census in their respective states. *Id.* ("Specifically, they argue that the undercount will result in a loss of representation in the House of Representatives, as well as a loss of federal funding for their [respective states'] communities' schools and roads.")

*Kraviz* is inapposite from the allegations and data in this case because Van Cleve has not alleged in what manner Van Cleve or any protected group is particularly affected by the current version of the Standards or that the current Standards would reduce or impact Van Cleve's or any protected group's representation in the House of Representatives. On the contrary, Van Cleve

alleges in a conclusory manner that the current version of the Standards, without more precise categories, "would reduce or negatively affect the enumeration count for the 2020 U.S. Census/2020 ACS by leading to nonresponse, whereas more precise race categories act as a motivator for Americans to answer the 2020 U.S. Census/2020 ACS questions." (Third Am. Compl, ECF No. 72 at ¶ 12.) Further, although the Supreme Court has recognized that a reduction of federal funding could constitute a concrete injury, *New York*, 139 S. Ct. 2565, Van Cleve has not plausibly alleged that the exclusion of MENA and Hispanic as distinct racial groups will likely cause the injuries he claims. *See Parks v. United States Dep't of Com.*, 456 F. Supp. 3d 691, 697 (D. Md. 2020) (distinguishing *Kravitz* and finding that the plaintiff failed to allege a concrete injury). Indeed, the complaint later alleges that the Census Bureau found that individuals in the MENA population will continue participating in the Census regardless of the existence of a distinct MENA race and that if given the option to identify as MENA, White, or Black, they will select MENA. (Third Am. Compl., ECF No. 72 at ¶ 256.) Thus, it appears from the complaint that for purposes of being counted in a state's population, the Standards do not serve to exclude MENA or Hispanic persons from the Census. *See Parks*, 456 F. Supp. 3d at 697.

Because the Court finds that Van Cleve has failed to allege sufficient facts to establish Article III standing, the Court need not address the Defendants' remaining arguments.

### 4. Conclusion

For the foregoing reasons, the Court **grants in part** the Defendants' motion to dismiss the complaint. (**ECF No. 76**.) The Court **denies** the Defendants' request that this action be dismissed with prejudice. The Clerk of the Court is directed to **close** this case and **deny** all pending motions as moot.

**Done and Ordered** in chambers, at Miami, Florida, on October 13, 2021.

_____
Robert N. Scola, Jr.
United States District Judge